IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BEATRICE HUDSON,** | ) | **CASE NO. 8:05CV44** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **PHYSICIANS MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on defendant's motion for summary judgment (Filing No. 46), and plaintiff's cross-motion for summary judgment (Filing No. 49). Plaintiff has asserted claims for employment discrimination under Title VII of the Civil Rights Act of 42 U.S.C. 2000 *et seq.,* 42 U.S.C. § 1981, the Fourteenth Amendment and the Nebraska Constitution.[1]

The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties. For the reasons explained below, the court finds and concludes that summary judgment should be granted.

---

[1] The Court dismissed plaintiff's Title VII claim for failure to exhaust her administrative remedies after plaintiff was unable to provide the court with a right to sue letter. (Filing No. 24). On July 27, 2006, plaintiff filed a motion to proceed with the filing of a Second Amended Complaint. (Filing No. 51). The court granted this motion and plaintiff filed a Second Amended Complaint attaching a right to sue notice from the Nebraska Equal Opportunity Commission ("NEOC") dated August 2, 2006 and reasserting her Title VII claims as well as asserting claims pursuant to the Fourteenth Amendment and the Nebraska Constitution. (Filing No. 54) Because the court's discussion of plaintiff's claims under its § 1981 analysis is dispositive as to plaintiff's Title VII claims, the court declines to determine whether the plaintiff successfully reasserted her Title VII claims. Moreover, plaintiff has failed to state a claim for which relief can be granted under the Fourteenth Amendment or the Nebraska Constitution, therefore, those claims are dismissed.

**FACTS**

On September 21, 2004, plaintiff, Beatrice Hudson, was hired by defendant, Physicians Mutual Insurance Company (Physician's Mutual), as a part-time inbound teleservices representative. Before Hudson received her offer of employment with Physician's Mutual, she filed a Charge of Discrimination against defendant with the NEOC and the Equal Employment Opportunity Commission ("EEOC") alleging failure to hire. Hudson explained that she filed this charge based on her impressions of what occurred during the interviewing process. After being offered a position with Physician's Mutual, Hudson withdrew her EEOC charge. On or about the first week of November 2004, Connie Bellows, Physicians Mutual's Assistant Vice-President of Human Resources, received a notice that Hudson had withdrawn her charge. Defendant states that prior to receiving the withdraw of charge notice, it had no notice of plaintiff's charge with the NEOC.

On or about December 18, 2004, plaintiff and a co-worker, Teresa Ware, an African American female, had a verbal altercation. As a result of the altercation, plaintiff's supervisor Elvis Harrell, an African American male, stated that he might need to separate Hudson and Ware.

Hudson claims that, as a result of either the EEOC charge or her complaint about Ms. Ware, she was harassed at work. Hudson describes the following incidents as harassment. On January 19, 2005, supervisor Harrell pulled Hudson off the floor to discuss a customer complaint. The customer claimed that Hudson stated to her that "Catholics are no good people" and that Hudson wished she worked for the Cricket Phone Company. Hudson denies that she made either of these comments and stated that she refused to sign a disciplinary form stating that she made these comments.

On January 28, 2005, Hudson states that she was improperly asked by her supervisor Harrell to change seats because she was sitting in another employee's seat. On that same day, plaintiff was asked to meet with Harrell to address complaints made by a client, William Cuttes. Defendant states that Mr. Cuttes claimed that plaintiff was condescending to him on a call. Plaintiff denies Mr. Cutte's accusations.

On February 1, 2005, plaintiff was again asked to meet with supervisor Harrell and questioned about whether she physically "bumped" into co-worker Teresa Ware. Plaintiff denied the incident occurred. Hudson was suspended pending an investigation. During the investigation, Harrell and Bernie Cameli interviewed two workers that had witnessed the two alleged bumping incidents on January 31, 2005, and February 1, 2005. After concluding the investigation, defendant determined that plaintiff intentionally physically bumped into Ms. Ware and decided to terminate plaintiff based on this conduct. Plaintiff was terminated on February 3, 2006.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that

3

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *See Tenbarge v. Ames Taping Tool Sys., Inc.*, 128 F.3d 656, 657-58 (8th Cir. 1997). Accordingly, a party moving for summary judgment must "set forth in the brief in support of the motion for summary judgment a separate statement of each material fact as to which the moving party contends there is no genuine issue to be tried and as to each shall identify the specific document or portion thereof or discovery response or deposition testimony ... which it claims established the fact." NELR 56.1(a).

In the face of a properly supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998) (quoting Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings, but rather, must set forth specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 922 (8th Cir. 1998). In this respect, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts;' ... [i]t must show there is sufficient evidence to support a jury verdict in [its] favor." *Chism v. W.R. Grace & Co.*, 158

F.3d 988, 990 (8th Cir. 1998). Accordingly, the nonmoving party must "set forth in its opposing brief a separate statement of each material fact as to which it is contended there exists a genuine issue to be tried and as to each shall identify the specific document or discovery response or deposition testimony ... which it is claimed establishes the issue." NELR 56.1(b).

## DISCUSSION

**Prima Facie Case**

We analyze Title VII disparate treatment claims and § 1981 claims in the same manner. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997) (noting that the *McDonnell Douglas* analysis is applicable to Title VII disparate treatment and § 1981 claims). We employ the familiar *McDonnell Douglas* burden-shifting framework to conduct our analysis. *Turner v. Honeywell Fed. Mfg. & Techs.*, LLC, 336 F.3d 716, 720 (8th Cir.2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973)). "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a prima facie case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production." *Pope v. Esa Serv., Inc.*, 406 F.3d 1001, 1006-07 (8th Cir. 2005) (citations omitted). Once a plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action." *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994). If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Pope*, 406 F.3d at 1007. The plaintiff has the burden of persuasion at all times. *Id*

**Racial Discrimination**

Plaintiff's first claim in her second amended complaint argues that she was harassed and fired from her position with Physician's Mutual because of her race. Defendant counters that because plaintiff admitted in her deposition that none of the alleged incidents of harassment occurred as a result of her race, summary judgment should be granted in its favor.

In order to establish a prima facie case of race discrimination under *McDonnell Douglas*, Hudson must show that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) the discharge occurred in circumstances which give rise to an inference of unlawful discrimination. See *Tatum v. City of Berkeley*, 408 F.3d 543, 551 (8th Cir. 2005); *Putman v. Unity Health System*, 348 F.3d 732, 736 (8th Cir. 2003).

Here, plaintiff has failed to establish the fourth prong of the prima facie case, that the circumstances give rise to an inference of unlawful discrimination. Indeed, as defendant argues, when plaintiff was asked about each incident of harassment she admitted that she did not believe these incidents were based on her race. (see Filing No. 48 Hudson Depo at pgs. 43, 60-61, 80). Mr. Harrell and Ms. Bellows also stated in affidavits filed with the court that the acts of disciplining Hudson and Hudson's termination did not occur because of her race. (Filing No. 48 Exh. C Bellows Aff. at ¶ 7, Exh. D Harrell Aff. at ¶ 11). Plaintiff has provided no additional evidence to challenge this record and has therefore failed to establish a prima facie case of discrimination.

Furthermore, while the court does not believe plaintiff has met her burden of setting forth her prima facie case, it will assume that, in the alternative, that plaintiff established

a prima facie case of race discrimination. The burden would then shift to the defendant to articulate a nondiscriminatory reason for plaintiff's discharge. Defendant has done so.

Defendant has articulated nondiscriminatory reasons for terminating plaintiff, namely, the two "bumping" incidents. The court is not to sit as a super-personnel department to oversee management decisions. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999).

Plaintiff submitted no additional evidence to show that the defendant's proffered reasons for the termination were merely a pretext for discrimination.

**Retaliation**

Hudson's second claim argues that defendant improperly retaliated against plaintiff for filing a charge of failure-to-hire with the EEOC and NEOC and for reporting a confrontation between plaintiff and Ms. Ware.

To establish a prima facie case of retaliation, Hudson must show that "[she] engaged in protected conduct, that [she] suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct." *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004).

Here plaintiff has failed to establish a prima facie case of retaliation based on the filing of her NEOC charge. She cannot establish a link between her filing of this charge and the actions of her supervisors on January 19, 2005, January 28, 2005, and February 1, 2005, or her termination, because her supervisors were never given notice of the charge of discrimination. Connie Bellows, Vice President of Human Resources, filed an affidavit stating that she never informed Elvis Harrell, Manager Kelly LeBlanc or anyone else in her

department that defendant had been notified that the charge filed by Ms. Hudson had been withdrawn. Plaintiff does not provide any evidentiary basis to dispute Ms. Fellows affidavit.

Furthermore, assuming that plaintiff could establish a prima facie case of discrimination based on reporting the incident between Ms. Ware and herself, she cannot establish that defendant's legitimate business reason for disciplining and terminating her was pretext. The defendant has articulated a legitimate business reason for each of the meetings with plaintiff and for its decision to terminate plaintiff. Plaintiff's supervisor Harrell filed an affidavit stating that the meetings in January and February occurred solely to address the issues raised at the meetings and were not in retaliation for plaintiff's NEOC charge or the altercation with Ms. Ware. Plaintiff has not produced any evidentiary basis that defendant's proffered reasons for the discipline and termination was merely a pretext for discrimination.

IT IS ORDERED:

1. The defendant's motion for summary judgment (Filing No. 46) is granted.

2. The plaintiff's motion for summary judgment (Filing No. 49) is denied.

3. A separate judgment will be entered.

DATED this 20th day of September, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge